IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AORTECH INTERNATIONAL PLC, a Scottish corporation,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK MAGUIRE, an individual,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING AORTECH'S SEALED MOTION FOR LEAVE TO FILE SECOND AMENDED AND CONSOLIDATED COMPLAINT (ECF NO. 177)**<br><br>Case No. 2:14-cv-00171-RJS-EJF<br>(Consolidated Civil No. 2:15-cv-00353-RJS) |
| FOLDA, LLC, a California limited liability company, FOLDAX, INC., a Delaware corporation, and KENNETH A. CHARHUT, an individual,<br><br>    Defendants. | District Judge Robert J. Shelby<br>Magistrate Judge Evelyn J. Furse |

Plaintiff AorTech International PLC ("AorTech") moves the Court for leave to file a Second Amended and Consolidated Complaint. (Mot. for Leave to File 2d Am. & Consolidated Compl. & Mem. in Supp. ("Mot.") 1, ECF No. 177.) AorTech seeks to consolidate its Amended Complaint, which named only Frank Maguire, with its complaint in the consolidated California case, 2:15-cv-00353-RJS, which named Folda, LLC, Foldax, Inc., and Kenneth A. Charhut (collectively, the "Folda Defendants"). (*Id.* at 13.) Furthermore, AorTech seeks to add two claims against the Folda Defendants: (1) inducement of breach of contract/ intentional interference with contract, and (2) aiding and abetting or otherwise dishonestly assisting in a breach of fiduciary duty. (*Id.*) Mr. Maguire and the Folda Defendants do not oppose the consolidation of the complaints but oppose the other aspects of the amendment. Having

1

reviewed the parties' briefing and the case record, the Court GRANTS AorTech's Motion to consolidate the complaints and to add the two claims against the Folda Defendants to the extent the claims do not allege misappropriation of confidential information under Utah law. The Court sees no problem with the reference to the heart valve business plan trade secret as AorTech previously disclosed that trade secret in its interrogatory responses.

## FACTUAL AND PROCEDURAL BACKGROUND

AorTech filed a Complaint against Mr. Maguire on March 7, 2014, and an Amended Complaint on April 24, 2014. (ECF Nos. 2, 12.) The Amended Complaint contained seven causes of action: breach of contract, breach of fiduciary duty, corporate opportunity, misappropriation of trade secrets under the Uniform Trade Secret Act ("UTSA"), intentional interference with existing and prospective economic relations, conversion, and business disparagement. (Am. Compl. ¶¶ 50-91, ECF No. 12.) At the August 1, 2014 hearing on Mr. Maguire's motion to dismiss, the Court dismissed AorTech's claims of corporate opportunity, intentional interference, conversion, and business disparagement in their entirety. (Aug. 1, 2014 Hr'g Tr. 13-17, ECF No. 46; Order Following Oral Ruling, ECF No. 49.) The Court denied Mr. Maguire's motion to dismiss with respect to the breach of contract claim, the misappropriation of trade secrets under the UTSA, and the breach of fiduciary duty claim to the extent the claim does not rely on the "use or misuse of confidential information" or relies on law from outside of Utah. (Aug. 1, 2014 Hr'g Tr. 12-13, 17-18, ECF No. 46.)

On February 4, 2015, AorTech filed a complaint in the Central District of California against the Folda Defendants. (Compl. for Damages & Inj. Relief ("California Compl."), *AorTech Int'l PLC v. Folda, LLC et al.*, No. 2:15-cv-353, ECF No. 1.) AorTech alleged only trade-secret misappropriation in that complaint. (*Id.* ¶¶ 48-63.) On March 13, 2015, the Folda

Defendants moved to transfer the California case to Utah, and the Central District of California granted the motion on May 13, 2015. (*AorTech Int'l PLC v. Folda, LLC et al.*, No. 2:15-cv-353, ECF Nos. 29, 42.) On August 20, 2015, the District Court consolidated these two actions. (ECF No. 154.)

AorTech describes itself as a "biomaterials and medical device development company involved in the development and commercialization of its unique and proprietary biostable, implantable polymers, Elast-Eon$^{TM}$ and ECSil$^{TM}$." (Am. Compl. ¶ 6, ECF No. 12.) This litigation generally revolves around Mr. Maguire's knowledge and sharing of AorTech's confidential and trade secret information gained as CEO and the Folda Defendant's involvement with obtaining and using that information.

Shortly after the Court entered a scheduling order in February 2015, AorTech sent Mr. Maguire its first set of discovery requests asking Mr. Maguire to "[p]roduce all communications or email in your possession or under you[r] control that you sent to or received from Establishment Labs or any of its employees or agents" and "[p]roduce all communications or email in your possession or under you[r] control that you sent to or received from Jason Beith, Charles Love, Sarah Price, or any current or former AorTech employee or consultant." (Answers & Resps. to Pl.'s 1st Set of Interrogs., Reqs. for Admis., & Reqs. for Produc. 55-56, ECF No. 110-1.) Mr. Maguire responded to these discovery requests in May 2015 but did not produce the documents until late June 2015. (*Id.* at 68; Mot. 6, ECF No. 177.)

In September and October 2015, Folda, Foldax, and Sarah Price, a former AorTech employee and current Foldax employee, produced additional e-mails between Mr. Maguire, Mr. Charhut, and former AorTech employees that AorTech alleges form the basis for the instant Motion to Amend. (Mot. 6-8, ECF No. 177.) These e-mails contain discussions between Mr.

Maguire and Mr. Charhut about ways to get around Mr. Maguire's Service Agreement, exchanges of AorTech's confidential information, steps needed to establish Foldax, and ways to get around AorTech's heart-valve patent. (*See* Exs. B-S, ECF Nos. 177-3-177-20.) After reviewing these e-mails, AorTech filed the instant Motion to Amend on October 30, 2015. (ECF No. 177.)

## DISCUSSION

Because AorTech has already amended its complaint once, it may file a second amended complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. "The district court has 'wide discretion to recognize a motion for leave to amend in the interest of a just, fair or early resolution of litigation.'" *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.* (quoting *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993)). Mr. Maguire and the Folda Defendants argue that AorTech unduly delayed in bringing its proposed additional claims, the claims would prove futile, and regardless of whether the Court allows AorTech to add its proposed claims, the Court should not allow AorTech to add a new non-polymer trade secret based on a heart valve business plan. (Mem. in Opp'n to AorTech's Mot. for Leave to File Second Am. & Consolidated Compl. 2-7 ("Opp'n Br."), ECF No. 196.)

I.  **AorTech Did Not Unduly Delay Seeking to Add the Proposed Claims.**

While courts can deny motions to amend for "undue delay," "[l]ateness does not of itself justify the denial of the amendment." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)). However, "[t]he longer the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" *Id.* (quoting *Steir v. Girl Scouts*, 383 F.3d 7, 12 (1st Cir. 2004)). In determining whether a movant has unduly delayed in bringing a motion to amend, the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. For instance, courts may deny leave to amend where the movant "has no adequate explanation for the delay." *Id.* (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)). Moreover, courts may deny leave to amend for lack of excusable neglect "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

AorTech filed its Motion to Amend on October 30, 2015, the last day for such motions under the scheduling order.  (*See* ECF Nos. 154, 177; *AorTech Int'l AC v. Folda, UC,* No. 2:15-cv-353, ECF No. 65.)  A motion to amend filed on the last day to move to amend does not indicate undue delay by itself.  In *Minter v. Prime Equipment Company*, the Tenth Circuit reversed the district court's order striking the plaintiff's alteration product liability claim, even though the plaintiff attempted to assert the claim after the motion to amend deadline passed and a mere three weeks before the scheduled trial.  *Minter*, 451 F.3d at 1206-07.  The plaintiff explained that it attempted to change its manufacturer product liability claim to an alteration

product liability claim within one month of receiving an expert witness report from the opposing party containing enough factual information to support the later claim. *Id.* at 1207. Because the plaintiff provided an adequate explanation for the delay, the Tenth Circuit held the plaintiff did not unduly delay bringing its alteration product liability claim. *Id.* at 1206-07.

The Amended Complaint acknowledges AorTech suspected Mr. Maguire violated the terms of his Service Agreement by disclosing AorTech's trade secrets and other confidential information to Foldax shortly after Mr. Maguire's resignation in 2013. (Am. Compl. ¶¶ 38-46, ECF No. 12.) However, prior to obtaining the pertinent e-mails in September and October 2015, nothing in the record indicates AorTech had notice that the Folda Defendants knew about Mr. Maguire's Service Agreement with AorTech and encouraged him to violate it. The November 4, 2013 e-mail from Mr. Maguire to Mr. Charhut discloses Mr. Maguire's employment history with AorTech, the provisions of his Service Agreement, including a confidentiality clause and non-compete clause, and his intention to ask a lawyer to "get a read on the various provisions of the agreement." (Ex. F, ECF No. 177-7.) This e-mail puts AorTech on notice of the Folda Defendants' knowledge of Mr. Maguire's Service Agreement and his general obligations under it. Without such notice, AorTech would likely not have had a good faith basis to bring claims of intentional interference with contractual relations or aiding and abetting a breach of fiduciary duty against the Folda Defendants given the mens rea standard for these torts.

Mr. Maguire and the Folda Defendants ignore the nature of the new claims AorTech seeks to allege against them by pointing to record evidence that purportedly shows AorTech had sufficient knowledge of the Folda Defendants' involvement in encouraging Mr. Maguire to breach his Service Agreement and fiduciary duties long before September and October 2015. (Opp'n Br. 2-3, ECF No. 196.) For instance, Mr. Maguire and the Folda Defendants point out

that Mr. Maguire specifically conveyed in his resignation letter that he will pursue a heart valve business venture with Mr. Charhut, that AorTech knew Mr. Maguire allegedly disclosed confidential information to the Folda Defendants shortly after his resignation, and that "[t]hese detailed allegations of collusion" formed a main part of AorTech's preliminary injunction that the Court denied.  (*Id.*)  Mr. Maguire and the Folda Defendants argue that AorTech now attempts to "re-package [these allegations] as 'aiding and abetting' or 'interference' claims'" that AorTech could easily have brought in the California suit against the Folda Defendants.  (*Id.* at 3.)

As AorTech points out, however, the heart valve business venture Mr. Maguire described in his resignation letter purported to rely on the TAVI technology developed at Caltech, and Mr. Maguire agreed when asked that a license to use AorTech's polymers merited discussion.  (Reply Mem. Supp. AorTech's Mot. for Leave to File 2d Am. Compl. & Consolidated Compl. ("Reply") 4-5, ECF No. 211; 1st McDaid Decl. ¶¶ 31, 33, ECF No. 16.)  These documents all reflect the Folda Defendants' involvement in a business plan but not necessarily their knowledge about Mr. Maguire's contractual obligations and fiduciary duties to AorTech.  Furthermore, nothing in Mr. Maguire's resignation letter or any of the other documents AorTech had in its possession prior to receiving the e-mails at issue indicated the Folda Defendants' involvement in assisting the breach of Mr. Maguire's Service Agreement or fiduciary duties.  The e-mails at issue arguably support AorTech's theory that the Folda Defendants knew about Mr. Maguire's obligations prior to his resignation and helped him hatch a plan to thwart his contractual and fiduciary obligations.  Thus, the Court concludes the new claims AorTech seeks to add against the Folda Defendants stem from additional facts not known to AorTech prior to receiving the September and October 2015 e-mails.

Mr. Maguire and the Folda Defendants also argue that "AorTech's delays were [] strategic and not passive." (Opp'n Br. 10, ECF No. 196.) They accuse AorTech of forum-shopping by filing the California action against only the Folda Defendants after the District Court denied AorTech's motion for preliminary injunction and assert their position that AorTech knew about the Folda Defendants' alleged collusion with Mr. Maguire from the start. (*Id.*) But again, Mr. Maguire and the Folda Defendants' evidence does not suffice to show undue delay in AorTech's bringing the additional claims. Moreover, Mr. Maguire and the Folda Defendants allege that AorTech purposely omitted these claims from its California Complaint because had AorTech included these claims, "AorTech would have been unable to resist transfer on this theory that its Utah action and its California action supposedly differed." (*Id.*) However, the record suggests AorTech sued the Folda Defendants in California not because it sought a friendlier forum but because AorTech did not believe the District of Utah had personal jurisdiction over the Folda Defendants. (Pl. AorTech Int'l PLC's Opp'n to Defs.' Mot. to Transfer 5-13, *AorTech Int'l PLC v. Folda, LLC*, 2:15-cv-353, ECF No. 38.) On this evidence, the Court finds no evidence that AorTech unduly delayed filing the instant Motion to Amend.

II. **Mr. Maguire and the Folda Defendants Fail to Show that AorTech's Proposed Additional Claims Would Prove Futile.**

In addition to undue delay, Mr. Maguire and the Folda Defendants argue that AorTech's proposed additional claims would prove futile because the UTSA preempts them or AorTech fails to plead sufficient facts showing intentional interference with Mr. Maguire's Service Agreement or aiding or abetting a breach of fiduciary duty. (Opp'n Br. 12-17, ECF No. 196.) A proposed amended complaint proves futile if a court could dismiss it for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999).

### A. The UTSA Preempts AorTech's Proposed Claims Only to the Extent They Allege Misuse of Confidential Information Under Utah Law.

First, Mr. Maguire and the Folda Defendants argue AorTech disregards the District Court's holding, based on the Utah Court of Appeals' holding in *CDC Restoration & Construction, LC v. Tradesmen Contractors, LLC*, that tort claims "are 'preempted to the extent that [they are] based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information.'" (Opp'n Br. at 13 (quoting Aug. 1, 2014 Hr'g Tr. 11:18-22, ECF No. 46), (alteration in original), ECF No. 196.) "Under this standard, if proof of a non U.T.S.A. claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted, irrespective of whatever surplus elements of proof are necessary to establish it." (Aug. 1, 2014 Hr'g Tr. 11:22-12:1, ECF No. 46 (quoting *CDC Restoration*, 2012 UT App 60, ¶ 48, 274 P.3d 317).)

Specifically, Mr. Maguire and the Folda Defendants take issue with paragraphs 112 and 119 of the proposed Second Amended Complaint, which allege identically:

> Communications between Maguire, Charhut, and other individuals now associated with Foldax indicate that before Maguire resigned from AorTech, the individuals who would eventually make up Foldax had circulated AorTech's heart-valve business plan and, upon information and belief, adopted it as Foldax's plan. The communications also suggest that on multiple occasions, individuals now associated with Foldax received confidential AorTech information from Maguire, who explained to them how the information would affect Foldax's prospects. Additionally, upon information and belief, Maguire, Charhut, and others associated with Foldax discussed Maguire's departure from AorTech at length before he announced his resignation.

(Proposed 2d Am. & Consolidated Compl. ("2d Am. Compl.") ¶¶ 112, 119, ECF No. 177-2.) The Court agrees with Mr. Maguire and the Folda Defendants that the first two sentences of these paragraphs relate to the misappropriation of AorTech's trade secrets or otherwise confidential information. Hence, the UTSA would preempt these claims to the extent they arise

9

under Utah law. *CDC Restoration*, 2012 UT App 60, ¶ 48. AorTech does not disagree. (Reply 8-9, ECF No. 211.) However, the District Court also held during the August 1, 2014 motion to dismiss hearing that the UTSA does not preempt claims arising under laws of other forums. (Aug. 1, 2014 Hr'g Tr. 12:22-13:3, ECF No. 46.) Thus, the UTSA would not preempt AorTech's proposed allegations in paragraphs 112 and 119 to the extent they arise under federal, Scottish, or California law. (*See id.*) Thus, aside from allegations relating to the misuse of AorTech's confidential information under Utah law, the UTSA does not preempt any of AorTech's remaining allegations of inducement to breach/intentional interference with contract or aiding and abetting/dishonest assistance breach of fiduciary duty.

    **B.    AorTech Adequately Pled the "Intent" and "Knowledge" Elements of Its Proposed Claims.**

Second, Mr. Maguire and the Folda Defendants argue that AorTech "fails to plausibly plead the required *intent* or the required *knowledge* to support its proposed additional claims." (Opp'n Br. 14, ECF No. 196.) Intentional interference with contract is an intentional tort requiring a party to plead intent/knowledge. *See, e.g., Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553; *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990); *British Motor Trade Ass'n v. Gray*, 1951 SC 586 (Scottish law). Similarly, "[t]he gravamen of the claim [of aiding and abetting a breach of fiduciary duty] is the defendant's knowing participation in the fiduciary's breach." *Mower v. Simpson*, 2012 UT App 149, ¶ 37, 278 P.3d 1076 (quoting *Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶ 33, 78 P.3d 616) (alteration in original); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 171 Cal. Rptr. 3d 548, 566-567 (Cal. Ct. App. 2014) (setting forth elements under California law, including knowledge). Mr. Maguire and the Folda Defendants argue that even if AorTech can show Mr. Maguire and the Folda Defendants intended to form a business venture (i.e. Foldax) together, AorTech does not

allege a sufficient factual basis to show the Folda Defendants intentionally interfered with Mr. Maguire's Service Agreement or knowingly aided Mr. Maguire to breach his fiduciary duties to AorTech. (Opp'n Br. 14, ECF No. 196.) In response, AorTech argues under Federal Rules of Civil Procedure 8(a)(2) and 9(b) that a party may allege intent and knowledge generally. (Reply 9-10, ECF No. 211.) Because AorTech's proposed allegations state the Folda Defendants' "knowledge of Maguire's contractual and fiduciary duties and their purposeful encouragement and acts to cause him to breach those obligations," AorTech claims it has adequately pled intent and knowledge. (*Id.*)

The Court agrees with AorTech that even under Rule 9(b), a party need only plead "intent, knowledge, and other conditions of a person's mind…generally." Fed. R. Civ. P. 9(b). Certainly, under *Bell Atlantic Corp v. Twombly*, plaintiffs must include sufficient facts in their complaints to make their claims plausible. 550 U.S. 544, 570 (2007). AorTech's proposed claims assert plausible claims that the Folda Defendants knew about Mr. Maguire's contractual and fiduciary obligations and encouraged him to breach them. The Second Amended Complaint alleges the Folda Defendants "took action intended to interfere with and cause Maguire to breach his contract with AorTech." (2d Am. Compl. ¶ 111, ECF No. 177-2.) AorTech then lists several examples of how the Folda Defendants interfered with Mr. Maguire's Service Agreement, such as encouraging and facilitating Mr. Maguire to divert his attention and abilities elsewhere, encouraging and facilitating Mr. Maguire to seek out competing business opportunities, and setting up a business to take advantage of Mr. Maguire's efforts. (*Id.*) Additionally, the Second Amended Complaint alleges the Folda Defendants "knew about Maguire's contract with AorTech. (*Id.* ¶ 110.)

Similarly, the Second Amended Complaint alleges that the Folda Defendants "knowingly gave substantial assistance and encouragement to Maguire to commit his breach of fiduciary duty to AorTech." (*Id.* ¶ 118.)  AorTech lists examples such as encouraging and facilitating Mr. Maguire's diversion of his time and efforts to promote his and the Folda Defendants' business interests over those of AorTech, encouraging and facilitating Mr. Maguire's attempts to capitalize on business opportunities for his and the Folda Defendants' benefit, and setting up a business to take advantage of Mr. Maguire's efforts.  (*Id.*)  The Court can reasonably infer intent at the motion to amend stage from the Folda Defendant's knowledge of Mr. Maguire's position and contract with AorTech, the information shared, and the plans allegedly being made.  Thus, the Court concludes AorTech's proposed Second Amended Complaint states plausible claims for intentional interference with contract and aiding and abetting breach of contract against the Folda Defendants on its face.

Mr. Maguire and the Folda Defendants argue the only piece of evidence that purportedly supports AorTech's secondary liability claims, namely the November 4, 2013 e-mail Mr. Maguire wrote to Mr. Charhut, "can only plausibly be read to demonstrate that Foldax and Charhut did *not* seek to cause a breach of fiduciary duty and did *not* want to intentionally interfere with Maguire's contract." (*Id.* at 15.)  They claim the November 4, 2013 e-mail plainly shows Mr. Maguire attempting to find ways to circumvent his contractual issues with AorTech legally, such as getting a waiver and hiring a UK labor lawyer to examine sections of his Service Agreement to prevent any potential contract breaches. (*Id.* (citing Ex. F, ECF No. 177-7).)  As explained above, without considering the contents of that e-mail, AorTech's secondary liability claims state facially plausible claims for relief that include knowledge and intent.  Considering that e-mail, the Court disagrees that one can only read the November 4, 2013 e-mail as

undermining AorTech's proposed claims.  The e-mail raises a factual issue because one can plausibly construe the e-mail in different ways, both supporting and opposing AorTech's position.  Thus, the Court does not find the e-mail makes AorTech's proposed additional claims futile.  Therefore, the Court concludes AorTech sufficiently pled the intent and knowledge elements of its proposed additional claims.

        **C.**      **AorTech's Proposed Intentional Interference Claim is Not Futile.**

Third, the Folda Defendants argue AorTech's proposed intentional interference claim fails to establish the improper means by which they allegedly interfered with Mr. Maguire's Service Agreement.  (Opp'n Br. 15-17, ECF No. 196.)  A claim for intentional interference with economic relations under Utah law requires proof "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) … by improper means, (3) causing injury to the plaintiff."  *Eldridge*, 2015 UT 21, ¶ 70.  The Utah Supreme Court defines improper means as follows:

> Improper means are present where the means used to interfere with a party's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common law rules.  Improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.  Means may also be improper or wrongful because they violate an established standard of a trade or profession.

*Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18, 192 P.3d 858 (quoting *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991)).  Utah courts have expressed an interest in protecting contracts from third-party interference but not at the expense of chilling competitive commercial activity.  *See Eldridge*, 2015 UT 21, ¶¶ 2-4 (summarizing the history and motivations of the doctrine in Utah.)

Federal courts with diversity jurisdiction apply the forum state's choice of law rules. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  "However,

where a case is transferred from one forum to another under 28 U.S.C. § 1404(a), as here, then the transferee court must follow the choice of law rules of the transferor court." *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964)). Hence, this Court must follow California's choice of law rules as the Central District of California transferred the case against the Folda Defendants to Utah. California applies the "governmental interest analysis" to resolve choice of law issues, which involves three steps. *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law "to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state" . . . and then ultimately applies "the law of the state whose interest would be the more impaired if its laws were not applied."

*Id.* (citations omitted).

Under step one of California's governmental interest framework, the Court finds the three potentially affected jurisdictions, Utah, California, and Scotland, have different laws with respect to intentional interference with contract claims. Under California law, a plaintiff alleging intentional interference with contractual relations must show "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec.*, 791 P.2d at 589-90. Notably, the plaintiff need not show interference through improper means. *See id.* Scottish law apparently has similar requirements to California law. *See, e.g., Lictor Astalt v. Mir Steel UK Ltd.*, [2011] EWHC 3310 (CH), ¶¶ 33-35, 42-43, 2011 WL 5903266; *British Motor*

14

*Trade Ass'n,* 1951 SC 586 (noting "Any active step taken by a defendant having knowledge of the covenant by which he facilies a breach of the covenant is enough."). Available at http://bailii.org/scot/cases/ScotCS/1951/1951_SC_586.html, last visited Oct. 20, 2016. Thus, both Scotland and California appear to express a preference for greater protection of contracts than Utah has. Because Scottish law and California law on interference with contract appear the same on this point, the Court need only choose between Utah law and California/Scottish law.[1]

At step two, the Court examines both Utah and California/Scotland's interests in the case in the application of their respective intentional interference law to determine whether a true conflict exists. *Kearney*, 137 P.3d at 922. AorTech seeks to add its intentional interference claim solely against the Folda Defendants, all of whom reside in California. (*See* California Compl. ¶¶ 2-4, No. 2:15-cv-353, ECF No. 1.) AorTech is a citizen of Scotland. (*Id.* ¶ 1.) Utah has no interest in the disputes between AorTech and the Folda Defendants. Utah's connection to this case comes through Mr. Maguire's residency in Utah. (2d Am. Compl. ¶ 2, ECF No. 177-2.)

The Court concludes California and/or Scotland has a substantial interest in having its intentional interference law applied while Utah does not. Scotland's law expresses an interest in protecting its residents from having their contracts interfered with by a party knowingly inducing breach. California similarly seeks to protect contracts from breach induced by a third party with knowledge of the contract. With the complaining, contracting party in Scotland and the allegedly inducing party in California, the Court finds these two jurisdictions have the primary interest in protecting the contract and deterring interference. Both these jurisdictions focus on the defendant's knowledge and do not require improper means to prove intentional interference with

---

[1] Should the parties determine California and Scottish law diverge at some point as the case develops, and that divergence is material to the case, the Court will reconsider which law should apply.

contract. Because neither the complaining party nor the accused reside in Utah and no one has alleged the effects fall in Utah the Court can only conclude California/Scottish law does not truly conflict with Utah's interests in requiring a showing of improper means by resident defendants before finding them liable. Thus, the Court concludes no "true conflict" of governmental interest exists here, and California and/or Scottish law applies to AorTech's proposed intentional interference claim. *See accord Reich v. Purcell*, 432 P.2d 727, 730-31 (Cal. 1967) (finding no true conflict and stating "A defendant cannot reasonably complain when compensatory damages are asserted in accordance with the law of his domicile and plaintiffs receive no more than they would have had they been injured at home."); *Hurtado v. Superior Court*, 522 P.2d 666, 670, 674 (Cal. 1974) (applying California wrongful death recovery law where Mexico had no interest in applying its damages limitation in wrongful death cases to nonresident defendants). Therefore, because neither California law nor Scottish law requires AorTech to show the Folda Defendants acted through improper means, the Court finds AorTech has sufficiently pled its proposed intentional interference claim.

**III. AorTech Previously Identified the Polymer Heart Valve Business Plan as a Trade Secret.**

In addition to AorTech's proposed amendment to add the two claims against the Folda Defendants, Mr. Maguire and the Folda Defendants argue the Court should not allow AorTech to add "a subtly injected *new non-polymer trade secret* in the pleadings: a heart valve business plan trade secret." (Opp'n Br. 4, ECF No. 196.) Specifically, Mr. Maguire and the Folda Defendants take issue with AorTech's using the language "AorTech owns and was in possession of trade secret information . . . including, but not limited to . . . the development, manufacture, and marketing of a polymer heart valve." (2d Am. Compl. ¶ 85, ECF No. 177-2.) Mr. Maguire and the Folda Defendants also argue that AorTech's prior complaints allege trade secrets relating to

16

the manufacture and formulation of its polymers, and a patent on its artificial heart valve. (Opp'n Br. 5, ECF No. 196.)  Mr. Maguire and the Folda Defendants note that a patent functions as the opposite of a trade secret, because it makes the inner workings of the invention public. Thus, because AorTech has a patent on its polymer heart valve, it cannot also have trade secrets related to it.

In response, AorTech points out that in its August 7, 2015 supplemental responses to Mr. Maguire's first set of interrogatories, it identified all trade secrets Mr. Maguire allegedly misappropriated, including the manufacture, development, and economics of its polymer heart valve projects.  (Reply 7-8, ECF No. 211; AorTech's Suppl. Resps. to Def.'s 1st Set of Interrogs, Reqs. for Produc. of Docs., & Reqs. for Admis. 5 ("Suppl. Resps."), ECF No. 211-2.)  That supplementation explicitly states, "AorTech's business plans constitute trade secrets," and "AorTech claims that Maguire has misappropriated at least the following business-plan trade secrets:  its Polymer Heart Valve Projects." (Suppl.  Resps. 5, ECF No. 211-2.)  Additionally, AorTech argues its "heart valve business plan trade secret" merely seeks to summarize its heart-valve business plan described in the fact section of its California complaint.  (Reply 7, ECF No. 211.)

While the District Court expressed a belief that the identification of new trade secrets ended in its hearing on September 3, 2015, (Sept. 3, 2015 Hr'g Tr. 80:13-:14, ECF No. 172) as the Folda Defendants contend, that hearing occurred approximately a month after AorTech explicitly disclosed the heart valve business plan as a trade secret in its supplemental response to Interrogatory 1, (Suppl. Resps. 5, ECF No. 211-2).  Thus, the Court does not find any surprise to Mr. Maguire and the Folda Defendants in its inclusion in the proposed Second Amended Complaint.

Furthermore, certainly no trade secret exists where the patent discloses it. However, situations do exist where information related to a product's development, manufacture, and marketing do not appear within a patent and may have trade secret protection. Whether the purported trade secrets in this case fall under this category remains for decision at later stages of this case.

## CONCLUSION

The Court finds AorTech did not unduly delay filing the proposed Second Amended Complaint, the proposed amendments are not futile, and no reason exists to exclude reference to trade secrets relating to AorTech's polymer heart valve business plan. Therefore, the Court GRANTS AorTech's Motion to consolidate its Amended and California Complaints in the Second Amended Complaint and add its proposed intentional interference with contract and aiding or abetting the breach of fiduciary duty claims against the Folda Defendants to the extent the claims do not allege misappropriation of confidential information under Utah law.

DATED this 21st day of October, 2016.

BY THE COURT:

_____
EVELYN J. FURSE
United States Magistrate Judge